UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 12-45-JBC

JAMES ZEPHERN BURTON, PLAINTIFF,

V.    MEMORANDUM OPINION AND ORDER

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the court on cross-motions for summary judgment on James Zephern Burton's appeal of the Commissioner's denial of his application for Supplemental Security Income ("SSI"). The court will grant the Commissioner's motion, R. 11, and deny Burton's motion, R. 10, because substantial evidence supports the administrative decision.

At the date of his disability filing, Burton was a 46-year-old man with a high school equivalency education and work experience as a roofer. AR 70, 317, 342. He alleged disability beginning January 1, 2007, due to cerebral palsy and "nerves." AR 70. He filed his application on January 29, 2010, and after several administrative denials and appeals, Administrative Law Judge ("ALJ") Ronald M. Kayser issued a decision determining that Burton was not disabled. AR 40-47. Under the traditional five-step analysis, *see* 20 C.F.R. § 416.920, the ALJ found

1

that Burton had not engaged in substantial gainful activity since January 29, 2010, the SSI application date; that he had "severe" impairments consisting of polysubstance abuse allegedly in remission, an affective mood disorder, and an anxiety disorder; that his impairments, whether considered singly or in combination, did not meet or medically equal one of the Commissioner's Listings of Impairment; that he retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with a moderate limitation in his ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and interact appropriately with the general public, but with the ability to understand and recall simple and some detailed work procedures and instructions, maintain attention for two-hour segments across a normal workday, complete the routine mental aspects of jobs, make associated work-related decisions without special supervision, follow a regular schedule, tolerate coworkers and accept supervision in an object-focused context with infrequent and casual contacts, and adapt to gradual change and appreciate work hazards on the job; and that, based on his RFC and the testimony of a vocational expert ("VE"), a significant number of unskilled jobs existed in the economy which Burton could perform. AR 42-46.  The ALJ thus denied Burton's claim of disability on August 29, 2011. AR 47. The Appeals Council declined to review, AR 27-29, and this action followed.

On review, Burton argues that the ALJ's decision is not supported by substantial evidence in light of the ALJ's misinterpretation of the evidence and procedural errors. For the following reasons, this argument will not prevail.

First, the ALJ's decision is not undermined by any misstatements or misunderstandings that he may have had regarding prior applications for benefits. The ALJ must make a credibility assessment of the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. 20 C.F.R. § 416.929(e). Even though the ALJ mentions two different dates for the denial of Burton's prior application for benefits – 1985 in one portion of the record and 1995 in his decision, AR 315, 40 – the exact date of the prior denial has no bearing on the outcome of Burton's current application. Burton cannot receive SSI benefits for periods occurring before the date of application, which in this case was January 29, 2010. AR 68. 20 C.F.R. § 416.335.

Nor is the ALJ's decision significantly undermined by confusion at the hearing regarding Burton's mental health history. The ALJ questioned Burton regarding a 1983 admission to Eastern State Hospital involving alcohol abuse. The evidence in the administrative record shows that the admission to Eastern State was in 2010, not 1983. AR 322-23, 239. However, the ALJ dropped this line of questioning when Burton denied the 1983 admission, and it does not appear that the ALJ was inaccurate in referring to an earlier admission to Eastern State. AR

3

323. The record of the 2010 admission shows a previous hospitalization at the facility in 1989. AR 239. Other evidence shows that Burton attempted suicide in 1983 by shooting himself in the abdomen. Burton testified that he was being seen at Eastern State at that time. AR 216, 335, 337. Regardless of the source of the ALJ's confusion, Burton had an extensive history of alcohol and other substance abuse by his own admission. AR 216, 239, 300, 324-25. A "harmless error analysis applies to credibility determinations in the Social Security disability context." *Ulman v Comm'r of Soc. Sec.,* 693 F.3d 709, 714 (6th Cir. 2012). Even viewing the evidence in the light most favorable to Burton, the errors made by the ALJ at the hearing were harmless.

Burton also asserts that the ALJ should have accepted his testimony that he had not used alcohol since August 2008. AR 325. But the ALJ did not find that Burton was continuing to abuse alcohol; rather, he correctly noted Burton's history of continuing abuse of substances such as marijuana and methadone. AR 43-44, 239, 242, 294, 303. This fact does not undermine the ALJ's credibility assessment.

Second, Burton disputes the ALJ's failure to find that his alleged cerebral palsy was a "severe" impairment. AR 42-43. Burton reported that he had been born with the condition and, as a result, still had daily tremors in his hands, head, and "whole body." AR 334. Burton notes that Nicole E. Yarber, the agency's consultative physical examiner, included cerebral palsy among her list of diagnoses.

4

AR 279.  Burton also cites school records from circa 1970 in which Burton's mother reported that she had fallen while she was pregnant, resulting in an injury to Burton's spine, and that a doctor had told her that her son had cerebral palsy. AR 307, 310.  The ALJ correctly noted, however, that Dr. Yarber's examination showed relatively few abnormalities.  Dr. Yarber noted a normal grip strength and adequate fine movements, dexterity, and ability to grasp objects. AR 278. She did find that Burton had difficulty with balance, standing on his toes and heels, and tandem walking, *Id.*, but she ultimately concluded that based on her findings, Burton should be able to sit, walk, and/or stand for a full workday with adequate breaks, and lift and carry objects without limitation. AR 279.  Also, in 2010, Dr. Akhtar, another examiner at Eastern State, noted Burton's comments stating that he had cerebral palsy when he was born but "outgrew it," and that he had some tremulousness, "which he attributed to anxiety," but by the time of his discharge he had no abnormal movements.  AR 240-41, 243.

The mere diagnosis of Burton's condition, cerebral palsy, does not denote its severity.  *Young v. Sec'y of Health and Human Servs.,* 925 F.2d 146, 151 (6th Cir. 1990).  Burton had the burden of establishing functional limitations resulting from his diagnosis of cerebral palsy, which he did not do.  Dr. Yarber's conclusion that Burton could perform a full range of work activity is uncontradicted by any medical source and provides substantial evidence to support the ALJ's RFC.

5

Third, Burton alleges that the ALJ failed to credit diagnoses of severe mental impairments, as shown by his hospitalizations for major depressive disorder, intermittent explosive disorder, and paranoia. AR 243, 279, 288. But these were not all of Burton's psychological diagnoses. When Dr. Akhtar at Eastern State Hospital diagnosed Burton with major depressive disorder in 2010, concurrent diagnoses included marijuana dependence, methadone abuse, and a history of alcohol dependence. AR 244. "An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Public Law 104-121, 42 U.S.C. § 423(d)(2)(C). Given Burton's extensive history of substance abuse, it would be difficult to separate restrictions due to alcoholism or drug addiction from discrete mental impairments. Any functional restrictions from the diagnoses of depression, paranoia, or explosive disorder as opposed to residual effects from substance abuse are purely speculative. Also, the ALJ's choice of mental restrictions mirrors the findings of a state agency reviewing psychologist, Dr. Ed Ross. AR 258-60. Dr. Ross, although a non-examiner, supplies substantial evidence to support the ALJ's RFC. 20 C.F.R. § 416.927(f)(2). Burton failed to carry his burden of showing greater restrictions.

The ALJ having properly applied the relevant legal standards and his decision being supported by substantial evidence,

6

**IT IS ORDERED** that Burton's motion for summary judgment, R. 10, is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment, R. 11, is **GRANTED**.

The court will enter a separate judgment.

Signed on January 4, 2013

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY